IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES, | ) |
| | ) |
| v. | ) |
| | ) |
| MICHAEL T. FISTZGILES, | ) Criminal Action No. 24-113-GBW |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM ORDER**

At Wilmington this 5th day of May, 2025:

Presently before the Court is Defendant Michael Fistzgiles' ("Defendant" or "Fistzgiles") Motion to Suppress Evidence ("the Motion to Suppress"). (D.I. 70). The Motion to Suppress is fully briefed. (D.I. 72; D.I. 74). On April 29, 2025, the Court held a hearing on the Motion to Suppress ("the Hearing").[1] The Court has carefully reviewed the parties' filings, the arguments therein, and the evidence presented at the Hearing. For the reasons explained below, the Court DENIES Defendant's Motion to Suppress.

**I.  BACKGROUND**

In March 2024, the Drug Enforcement Administration ("the DEA") and the New Castle County Police Department ("the NCCPD") (collectively, "law enforcement") began investigating Noah Jones ("Jones") for suspected drug trafficking. (D.I. 72 at 1). Law enforcement learned that Jones had ties to a residence, owned by Defendant Fistzgiles, located at 413 East 9th Street, Wilmington, Delaware ("the residence" or "the 9th Street residence").[2] (D.I. 72 at 2; *see also* D.I.

---

[1]  The Hearing transcript is denoted as "Tr." in citations.

[2]  Jones told his probation officer that he was "working" to renovate the residence and "would be residing at the residence once the work was complete." (D.I. 72, Ex. 1 ¶ 31).

72, Ex. 1 ¶¶ 33-38). "[L]aw enforcement observed Jones at the 9th Street residence, saw his vehicle parked outside the residence, and saw his phone number pinging in the area of the residence." (D.I. 72 at 2; *see also* D.I. 72, Ex. 1 ¶ 35). Based on their observations and information from a confidential source, law enforcement "believed that Jones was using the 9th Street residence as a stash location."[3] (D.I. 72 at 2). As a result, on September 26, 2024, "the DEA sought and obtained a warrant [("the Search Warrant")] to search the 9th Street residence." (*Id.* at 3; D.I. 72, Ex. 1).

The Search Warrant describes the property to be searched as a "row mixed-commercial / residential building, owned by Michael Fi[s]tzgiles, located at 413 E 9th Street, Wilmington, DE 19801." (D.I. 72, Ex. 1 at 18 (Attachment A)). The Search Warrant likewise describes that the evidence to be seized includes:

> a. United States currency in an amount exceeding $500 and money counters.
>
> b. Any and all controlled substances, including but not limited to methamphetamine, fentanyl, cocaine.
>
> c. Cellular telephones, telephone minute and/or calling cards, and any records pertaining to the use of cellular telephones including but not limited to contracts, bills and receipts.
>
> d. Indicia of occupancy, residency, rental, or ownership of TARGET LOCATION, including but not limited to photographs, utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, and escrow documents.
>
> e. Records reflecting names, addresses, and contact information for other individuals, including but not limited to telephone numbers of co-conspirators, sources of drug supply, drug customers, and other individuals or businesses with whom JONES has a relationship with.

---

[3] More specifically, law enforcement observed Jones traveling "to and from" the residence to controlled drug purchases. (D.I. 72, Ex. 1 ¶ 37). Additionally, informants told law enforcement that Jones was "stashing pounds of methamphetamine and cooking crack" at the residence. (*Id.*).

>   f. Financial data and records including but not limited to tax returns, financial statements, books, invoices, receipts, records of real estate transactions, bank statements, credit cards, credit card statements, deposit slips, withdrawal slips, canceled checks, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box records and keys, money wrappers, journals, ledgers, and other items evidencing the expenditure, obtaining, secreting, transfer and/or concealment of monies and/or assets.
>
>   g. Records pertaining to the rental and/or use of storage facilities, including safety deposit boxes, and keys to any such facilities.
>
>   h. financial instruments purchased with currency in the sum of $1,000 or more.
>
>   i. Records, documents, titles, mortgage paperwork, and deeds reflecting the purchase, rental, or lease of any real estate and vehicles, such as a car, truck, motorcycle, boat, plane, or RV.

(D.I. 72, Ex. 1 at 19-20 (Attachment B)).

On September 26, 2024, the DEA and the NCCPD executed the Search Warrant at the residence. (D.I. 72 at 3; *see also* D.I. 72, Ex. 2 (DEA Report)). While executing the Search Warrant, the "officers went upstairs and encountered Defendant and his girlfriend [Myesha Morefield ("Morefield")] in the hallway outside the front bedroom of the residence." (D.I. 72 at 3). Morefield and Defendant Fistzgiles were handcuffed and brought downstairs.[4] (*Id.*). Prior to executing the Search Warrant, law enforcement knew that "the residence's owner, Defendant Fistzgiles, had multiple prior felony convictions and was a person prohibited." (*Id.*).

During the search, law enforcement observed that "[t]he front bedroom was the only bedroom that appeared to be inhabited." (*Id.*). In the front bedroom, law enforcement found and

---

[4] "The Supreme Court has held that officers executing a search warrant lawfully may restrain persons present at the searched premises." *Torres v. United States*, 200 F.3d 179, 185 (3d Cir. 1999) (referring to *Michigan v. Summers*, 452 U.S. 692, 705 (1981)).

seized "suspected cocaine, suspected crack cocaine, suspected MDMA, suspected marijuana, drug packaging materials, and drug manufacturing materials." (*Id.* at 4; D.I. 70 at 2). Law enforcement also found mail addressed to Defendant Fistzgiles in the bedroom.[5] Additionally, in the bedroom closet, law enforcement found a photo of Defendant Fistzgiles, drug manufacturing materials, and "an unobstructed [Ruger LCP .380 caliber] handgun on top of a dresser" with four rounds of ammunition. (*Id.* at 3, 5; *see also* D.I. 22 at 1 (Redacted Indictment)). Law enforcement seized the firearm.

## II.  PROCEDURAL POSTURE

On November 26, 2024, a federal grand jury in the U.S. District Court for the District of Delaware indicted Defendant Fistzgiles on one count: possession of a firearm by a person prohibited in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (D.I. 22). Relevant here, Defendant filed the instant Motion to Suppress on April 15, 2025. (D.I. 70). In the Motion to Suppress, Defendant seeks to suppress the firearm. (*Id.* at 1-2). On April 28, 2025, the Government filed a Response Brief. (D.I. 72). On April 28, 2025, Defendant filed an Answering Brief in Support of the Motion to Suppress.[6] (D.I. 74). On April 29, 2025, the Court held a Hearing on the Motion to Suppress. During the Hearing, DEA Special Agent Jason Tomon ("Agent Tomon") testified, and the Government submitted additional evidence from the search and seizure.

---

[5]  The mail addressed to Fistzgiles was addressed to a different residence, 433 New Castle Ave, Wilmington, DE. (D.I. 70 at 2; *See also* Tr. 8:10-12).

[6]  Defendant is proceeding *pro se* in this action. Defendant's submission is dated "4/17," but it was filed with the Court on April 28, 2025. (*See* D.I. 74).

### III.  **LEGAL STANDARD**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The "ultimate touchstone" of the Fourth Amendment is reasonableness. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). "Generally, for a search or seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based upon probable cause." *United States v. Bey*, 911 F.3d 139, 144-45 (3d Cir. 2018). A warrant must "particularly describe[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. The so-called "particularity requirement" addresses "the central concern underlying the Fourth Amendment – the concern about giving police officers unbridled discretion to rummage at will among a person's private effects." *Arizona v. Gant*, 556 U.S. 332, 345 (2009); *see also United States v. Tracey*, 597 F.3d 140, 146-47 (3d Cir. 2010) (explaining the justification for the particularity requirement). Therefore, "the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. 798, 824 (1982). "Any seizure resulting from a search that exceeds the scope of a warrant is thus unconstitutional" and must be suppressed. *United States v. Edwards*, 343 Fed. App'x 468, 471 (11th Cir. 2009); *see also United States v. Dougherty*, 541 F. Supp. 2d 734, 742 (E.D. Pa. 2008) (stating same).

However, under the plain view doctrine, officers may lawfully seize items not described in a search warrant. *Arizona v. Hicks*, 480 U.S. 321, 326 (1987) ("'[i]t is well established that under certain circumstances the police may seize evidence in plain view without a warrant.'"). The plain view doctrine applies when the "police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character."

*Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971). More specifically, the plain view doctrine applies and "evidence obtained in violation of the Fourth Amendment need not be suppressed[,] so long as three requirements are met:" (1) "'the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed;'" (2) "the incriminating nature of the evidence must be 'immediately apparent;'" and (3) "the officer must have 'a lawful right of access to the object itself.'" *United States v. Karrer*, 460 Fed. App'x 157, 163-64 (3d Cir. 2012) (cleaned up) (quoting *United States v. Menon*, 24 F.3d 550, 559 (3d Cir. 1994)). In other words, "[i]f law enforcement officers are engaged in an otherwise lawful search and inadvertently discover in plain view contraband or other items, the incriminating nature of which is immediately apparent, those items may be seized even if those items fall beyond the original scope of the warrant." *United States v. Lum*, 557 F. Supp. 2d 461, 468 (D. Del. 2008).

## IV.    ANALYSIS

Defendant asserts that the evidence of the firearm should be suppressed because the scope of the search warrant was exceeded, and the Government cannot establish that the plain view doctrine applies. (D.I. 70; D.I. 74). Specifically, Defendant argues that the Government cannot establish that the incriminating nature of the firearm was immediately apparent to law enforcement. To support this argument, Defendant contends that there was no evidence indicating that he, a person prohibited, owned the firearm, and that possession of a handgun in one's home is not *ipso facto* illegal. (*See* D.I. 70 at 2, 7-8 (quoting *United States v. Heller*, 554 U.S. 570 (2008))). The Government, however, asserts that the firearm should not be suppressed because the plain view doctrine applies. The Government contends that the plain view doctrine applies because (1) "[l]aw enforcement's entry into the 9th Street residence was supported by a lawfully obtained residential search warrant;" (2) the firearm's incriminating character was

"immediately apparent" because it was proximate to a person prohibited and was "in the same room as drugs and other evidence of drug trafficking;" and (3) "officers had a lawful right of access to the gun." (D.I. 72 at 6, 7, 10). Ultimately, the Court agrees with the Government.

### A. The Plain View Doctrine Applies

As explained above, the plain view doctrine applies when law enforcement (1) has not "violated the Fourth Amendment in 'arriving at the place from which the evidence could be plainly viewed;'" (2) "the incriminating nature of the evidence [is] 'immediately apparent;'" and (3) the officers "'have a lawful right of access to the object itself.'" *United States v. Menon*, 24 F.3d 550, 559 (3d Cir. 1994) (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)). Here, Defendant does not contest that the officers were lawfully at the residence or had a lawful right of access to the firearm, as law enforcement possessed a valid search warrant. Rather, Defendant challenges whether the second element of the plain view doctrine – whether the incriminating nature of the firearm was immediately apparent – is met here.

Body camera footage and photographs taken by law enforcement evidence that the unobstructed firearm was found on top of a dresser in the bedroom closet. (*See* D.I. 72 at 4-5 (photographs); *see also* D.I. 72, Exs. 3, 4 (body camera footage)). Outside the closet, law enforcement found drugs in the bedroom. Defendant does not contest that drugs were present in the bedroom. (Tr. 11:24-12:1 (Defendant conceding "there was marijuana found.")). Inside the closet, with the firearm, law enforcement found drug manufacturing materials, including a scale, small plastic bags, a frying pan, a hot plate, and a Pyrex measuring cup. (*See* Tr. 23:14-23, 24:20-24 (testimony of Agent Tomon); *see also* D.I. 72, Ex. 3 (body camera footage)). Law enforcement also found a photograph of Defendant Fistzgiles in the closet. (D.I. 72, Ex. 6). Although the Search Warrant did not include firearms or weapons as items to be searched, the incriminating

nature of the firearm was immediately apparent to law enforcement. (*See* D.I. 28:3-9 (Agent Tomon testifying that "he immediately recognize[d] [the firearm] as evidence of a possible crime" because "the room contains narcotics and also because [he] knew Mr. Fistzgiles is a prohibited person.")).

Like here, "[t]he incriminating nature of guns in close proximity to drugs and drug paraphernalia is immediately obvious." *United States v. Montgomery*, 527 F.3d 682, 687 (8th Cir. 2008); *see also United States v. Jackson*, 120 F.3d 1226, 1229 (11th Cir. 1997) (holding that officers did not exceed the scope of a search warrant when they incidentally found a firearm, not drugs.). This is true because, "[i]n the context of narcotics investigations and prosecutions, firearms and ammunition are recognized as a tool of the drug trade and constitute evidence linked with criminal activity." *United States v. Houston*, Case No. 12-cr-0062-ADS, 2013 WL 149653 2013 U.S. Dist. LEXIS 5320, at *3 (E.D.N.Y. Jan. 12, 2013) (citing to *United States v. Becerra*, 97 F.3d 669, 671-72 (2d Cir. 1996)). Indeed, it is illegal to possess a firearm "during and in relation to any . . . drug trafficking crime" or to "use or carr[y]" a firearm "in furtherance of" a drug trafficking crime. 18 U.S.C. § 924(c)(1)(A). As such, law enforcement was justified in seizing the firearm due to its close proximity to the drugs in the bedroom and the drug manufacturing materials in the closet.

Additionally, and alternatively, the incriminating nature of the firearm was immediately apparent because it was "near and in the house of an individual that law enforcement knew was legally prohibited from possessing a firearm." (D.I. 72 at 7). Pursuant to 18 U.S.C. § 922(g)(1), it is unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess or receive a firearm. *Id.* Prior to executing the Search Warrant, law enforcement knew that Defendant Fistzgiles owned the

residence and was a person who had been convicted of a crime punishable by imprisonment for a term exceeding one year. (Tr. 15:9-16:8 (Agent Tomon testifying that law enforcement knew Defendant Fistzgiles owned the residence, performed a criminal background check on Fistzgiles, and knew that "Mr. Fistzgiles was a convicted felon prohibited from own[ing] a firearm.")). Therefore, the presence of the firearm in Defendant's residence, and, more specifically, in his alleged closet, provided law enforcement with probable cause to believe that it belonged to Defendant and constituted evidence of a crime. *See Texas v. Brown*, 460 U.S. 730, 741-42 (1983) (explaining that the plain view doctrine does not require that a "police officer 'know' that certain items are contraband or evidence of a crime," and instead requires that police have "probable cause for seizure in the ordinary case."). As such, the incriminating nature of the firearm was immediately apparent to law enforcement and, thus, its seizure was justified. *See, e.g., United States v. Patterson,* 405 Fed. App'x 602, 605-606 (3d Cir. 2010) ("[T]he 'incriminating character' of the firearm was 'immediately apparent' because, as an individual on supervised release, [the defendant's] possession of a weapon constituted an automatic violation of the terms of his release."); *Fish v. Brown*, 838 F.3d 1153, 1167 (11th Cir. 2016) ("[T]he incriminating nature of the weapons in [defendant's] bedroom was immediately apparent" because law enforcement knew defendant was prohibited from possessing a firearm.); *United States v. Lyons*, 488 F. App'x 40, 42 (6th Cir. 2012) (holding that "the incriminating nature of [a] box of ammunition was immediately apparent" when found in the living room of a "previously-convicted felon.").

**B.     Ownership of the Firearm will be Determined at Trial**

Separately, Defendant asserts that the firearm should be suppressed because law enforcement did not ask Morefield, who is not a person prohibited, whether the firearm belonged to her, and no evidence indicates that he owns the firearm. (*See* D.I. 70 at 2; *see also* D.I. 74 at 2

(asserting that no eyewitness accounts, confidential sources, DNA, or fingerprints tie Defendant to the firearm)). For support, Defendant cites to *United States v. Bailey*, 553 F.3d 940 (6th Cir. 2009) and *United States v. Mills*, 29 F.3d 545 (10th Cir. 1994). In both cases, the respective appellate courts overturned *convictions* for illegal possession of a firearm because of insufficient evidence presented at trial. Here, however, the Court is evaluating whether the evidence should be suppressed. A motion to suppress challenges the lawfulness of the government's conduct under the Fourth Amendment. Therefore, the Court's resolution of the instant motion does not bear on whether Defendant is ultimately found innocent or guilty of the charges brought forward. Whether the Government can prove each element of the crime charged, beyond a reasonable doubt, is a question to be resolved at trial by the jury, not the Court.

## V.     CONCLUSION

For the reasons explained above, Defendant's Motion to Suppress (D.I. 70) is DENIED. It is SO ORDERED.

_____
The Honorable Gregory B. Williams
UNITED STATES DISTRICT JUDGE