IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Criminal Action No. 24-113-GBW |
| | ) |
| MICHAEL T. FISTZGILES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM ORDER

Presently before the Court are the following motions *in limine* ("MIL(s)"):[1]

1. The Government's MIL #1: To Admit Defendant's Statements from Body Worn Camera Footage, Defendant's Federal Detention Center Calls, and Defendant's Court Filings (D.I. 75 at 18);

2. The Government's MIL #2: To Conditionally Admit Business Records (D.I. 75 at 19);

3. The Government's MIL #3: To Admit Audio Recordings of Defendant's Federal Detention Center Calls (D.I. 75 at 22);

4. The Government's MIL #4: To Admit Photographs of Defendant Believed to Have Been Taken in Prison (D.I. 75 at 23);

5. The Government's MIL #5: To Exclude Evidence Regarding Identities of Confidential Sources and Undercover Officers in Ongoing Drug Investigation (D.I. 75 at 28);

---

[1] The United States ("the Government") brings this criminal action against Michael T. Fistzgiles ("Defendant" or "Fistzgiles"). Defendant Fistzgiles is charged with one count: possession of a firearm by a person prohibited in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (D.I. 22 (Redacted Indictment)). The Court writes for the parties and, thus, will not detail the background or procedural history of this case.

6. The Government's MIL #6: To Admit Other-Acts Evidence on Cross-Examination or in Rebuttal (D.I. 75 at 29);

7. The Government's MIL #7: To Sequester Witnesses (D.I. 75 at 31);

8. The Government's MIL #8: To Preclude Defendant's Use or Admission of Materials not Produced by Defendant (D.I. 75 at 32);

9. Defendant's MIL #1: To Preclude the Government from Using the Terms "Convicted Felon" and "Felony" (D.I. 81 at 1);

10. Defendant's MIL #2: To Preclude the Government from Using any Discovery not yet Disclosed to the Defense (D.I. 81 at 6); and

11. Defendant's MIL #3: To Preclude the Government from Using the Term "Stash House" (D.I. 81 at 8).

Each of the Government's and Defendant's MILs are fully briefed. (D.I. 75; D.I. 81; D.I. 84; D.I. 87; D.I. 88). For the reasons explained below, the Court (1) GRANTS IN PART, DENIES IN PART, and RESERVES IN PART its ruling on the Government's MIL #1; (2) GRANTS the Government's MIL #2; (3) GRANTS IN PART and DENIES IN PART the Government's MIL #3; (4) GRANTS the Government's MIL #4; (5) GRANTS the Government's MIL #5; (6) DENIES WITHOUT PREJUDICE the Government's MIL #6; (7) GRANTS the Government's MIL #7; (8) GRANTS IN PART and DENIES IN PART the Government's MIL #8; (9) GRANTS Defendant's MIL #1; (10) GRANTS IN PART and DENIES IN PART Defendant's MIL #2; and (11) GRANTS Defendant's MIL #3.

I. **LEGAL STANDARD**

"[A] motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the

practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Motions *in limine* allow the court "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Id.* at n.2. Motions *in limine* may also be used to secure a pretrial ruling that certain evidence is admissible. *See, e.g., Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 517-18 (3d Cir. 1997); *United States v. Hawpetoss*, 478 F.3d 820, 825-26 (7th Cir. 2007); *United States v. Williams*, 939 F.2d 721, 723-24 (9th Cir. 1991). "The movant bears the burden of demonstrating that the evidence is inadmissible [or admissible] on any relevant ground, and the court may deny a motion *in limine* when it lacks the necessary specificity with respect to the evidence to be excluded [or included]." *Davis v. Spicer*, Civil Action No. 21-874-SRF, 2023 WL 2126150, 2023 U.S. Dist. LEXIS 27627, at *1-2 (D. Del. Feb. 17, 2023).

## II.   DISCUSSION

### A.   The Government's MIL #1

First, the Government seeks "to admit into evidence Defendant's statements recorded on law enforcement body camera, in [Federal Detention Center ("FDC")] calls,[2] and in Court filings for this case." (D.I. 75 at 18). The Government contends that these various statements, made by the Defendant, "are not hearsay because they are statements of a party opponent—Defendant himself." (*Id.* at 19 (citing to Fed. R. Evid. 801(d)(2)(A)). Defendant does not object to the admission of statements recorded on law enforcement body cameras. (D.I. 87 at 1). However, Defendant objects to the admission of the FDC calls and the admission of his *pro se* pretrial filings. (D.I 87 at 2). Specifically, Defendant contends that his statements are covered by the protections

---

[2]   On May 12, 2025, the Government filed a revised version of their Motion to Admit Statements from Defendant's Federal Detention Center Calls. (D.I. 91; *see also id.*, Ex. 1 (Attachment C) (Transcript Exhibits 1-5)).

3

of *Simmons v. United States*, 390 U.S. 377 (1968) ("*Simmons*"), and that a *pro se* defendant's filings do not qualify as party-opponent statements under the Federal Rules of Evidence. (*Id.* at 2). Ultimately, the Court will: (1) permit the Government to introduce Defendant's statements recorded on law enforcement body cameras; (2) deny the Government from admitting the statements made by Defendant in the FDC calls denoted as Exhibits 1 through 3 of Attachment C, but permit the Government to admit the statements made by Defendant in the FDC call denoted as Exhibit 5 of Attachment C; and (3) reserve its ruling as to statements made by Defendant in the FDC call denoted as Exhibit 4 of Attachment C and Defendant's statements made in filings with the Court.

### 1. Statements Captured by Law Enforcement Body Cameras

Pursuant to Federal Rule of Evidence 801, a statement offered against an opposing party is not hearsay if the statement: "was made by the party in an individual or representative capacity" or "is one the party manifested that it adopted or believed to be true." Fed. R. Evid. 801(d)(2)(a)-(b). The statements that the Government seeks to admit were made by Defendant himself. As such, they are statements made by "the party in an individual . . . capacity." *Id.* Therefore, none of the recorded statements, captured on law enforcement body cameras, are inadmissible hearsay.

### 2. Statements Made in FDC Calls

Next, Defendant objects to the admission of statements made in recorded FDC calls. Defendant asserts that the FDC recordings "carr[y] the substantial risk of unfair prejudice" because "jurors will either recognize that the very existence of a recorded call means that Mr. Fistzgiles is incarcerated, or they will be left to assume that the government was wiretapping the [D]efendant's calls, suggesting that he was the target of a larger and more sophisticated investigation." (D.I. 87 at 1). The Government, however, represents to the Court that it will "not play the beginning of the recordings where the audio reveals the call is from a prison" and "will not refer to the calls as

4

'jail calls,' but instead 'lawfully recorded phone calls'" which thus eliminates the risk of unfair prejudice. (D.I. 88 at 2). "Courts in the Third Circuit have generally declined to hold that indicia of a defendant's incarceration are unduly prejudicial where the indicia falls short of being [a] 'constant reminder to the jury over the course of trial that the defendant is a prisoner.'" *United States v. Mason*, Case No. 3:21-cr-01, 2023 WL 3254651, 2023 U.S. Dist. LEXIS 80514, at *8 (W.D. Pa. May 4, 2023) (quoting *United States. v. Faulk*, 53 F. App'x 664, 647-48 (3d Cir. 2002) (internal quotations omitted)). Additionally, Defendant's concern that the jury will infer that he was wiretapped, as the target of a federal investigation, is an inherent inference in all criminal trials where the Government seeks to admit a recording.

Nonetheless, the Court has reviewed the transcripts of the calls that the Government seeks to admit, which are denoted as Transcript Exhibits 1-5 of Attachment C. (D.I. 91, Ex. 1). The Court finds that the probative value of the statements made by Defendant in Exhibits 1 through 3 of Attachment C is substantially outweighed by a danger of unfair prejudice. *See* Fed. R. Evid. 403. Defendant's conversations with his girlfriend, Myesha Moorefield ("Moorefield"), in Exhibits 1 through 3 of Attachment C do not directly bear on the consequential fact at issue – whether Defendant possessed the firearm. Instead, the statements may "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."[3] *Old Chief v. United States*, 519 U.S. 172, 180 (1997). In the same vein, "in the weighing process under Rule 403 the judge cannot consider the credibility of witnesses." 2 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5214 (2d ed. 1994). The "credibility of a witness has

---

3   Illustratively, several of Defendant's statements in the exhibits seem to generally express his frustration with the criminal process and investigation. (*See* D.I. 91, Ex. 1, Transcript 3 (expressing frustration with the law enforcement during the execution of the search warrant.)).

5

nothing to do with whether or not his testimony is probative with respect to the fact which it seeks to prove." *United States v. Welsh*, 774 F.2d 670, 672 (4th Cir. 1985). As such, the Court is not persuaded that the statements in Exhibits 1 through 3 carry a relevant, probative value to the fact at issue in this case.

Additionally, the Court reserves its ruling on Exhibit 4 of Attachment C. Although the Court recognizes that the statements made in Exhibit 4 of Attachment C may serve to identify Defendant as the man in the photographs, in light of the Court's ruling below, the Court finds that the statements may be cumulative or unfairly prejudicial. As such, the Court defers its ruling on the admissibility of the statements made in Exhibit 4 of Attachment C, until the Government identifies the specific statements, and their relevance, during the context of trial.

With respect to Exhibit 5 of Attachment C, wherein Defendant discusses the two "starter pistols" found in the upstairs bedroom, those statements are admissible. The probative value of the statements in Exhibit 5 of Attachment C are not substantially outweighed by a danger of unfair prejudice. *See, e.g., United States v. Akin*, 213 Fed. App'x 606, 609-10 (9th Cir. 2006) (determining that additional contraband "tends to show [a defendant] had dominion and control over similar items found in the [suspect location]" which has "a tendency to make the existence of [defendant's] knowing possession of the [contraband in the suspect location] more probable than it would be without the evidence").

### 3. Statements Made in *Pro Se* Pretrial Filings

Additionally, Defendant objects to the admission of his *pro se* pretrial filings arguing that the statements therein are barred by the Supreme Court's holding in *Simmons* and do not qualify as opposing party statements under the Federal Rules of Evidence. (D.I. 87 at 2).

In *Simmons*, the Supreme Court stated:

6

> [Defendant] was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that *when a defendant **testifies*** in support of a motion to suppress evidence on *Fourth Amendment* grounds, ***his testimony*** may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection.

390 U.S. 394 (emphases added).

In light of this holding, the Court acknowledges that any testimony from a defendant at a suppression hearing might be deemed inadmissible in a subsequent criminal trial.[4] In this instance, however, Defendant did not testify at his suppression hearing; and the Government does not intend to admit such nonexistent testimony. Instead, Defendant, who was acting *pro se* at the time, made various statements in letters to the Court and in pretrial filings. These statements may be considered opposing party statements under Federal Rule of Evidence 801(d)(2). (*See* D.I. 88 at 2 (citing to cases where the court determined that a *pro se* defendant's filings were party opponent admissions under Federal Rule of Evidence 802(d)(2)(A)); *see, e.g., United States v. Gan*, No. 11-CR-2282, 2014 WL 12639937, at *1-2 (D.N.M. Jan. 29, 2014); *United States v. Cruz-Rivera*, No. 21-CR-160, 2021 WL 3500913, at *3 (S.D. Ind. Aug. 9, 2021); *United States v. Shrader*, No. 09-CR-270, 2010 WL 2671497, at *3-5 (S.D.W. Va. July 1, 2010).

---

[4] The Court observes that the Third Circuit has not determined whether such testimony can be used in either the Government's case-in-chief or to impeach a defendant. *See Durante v. United States*, Civil Action No. 16-8949, 2020 WL 205895, 2020 U.S. Dist. LEXIS 6865, at *13 n.5 (D.N.J. Jan.13, 2020) (observing same). Notably, several other circuits have concluded that *Simmons* does not preclude the use of testimony elicited during a suppression hearing for impeachment purposes. *See, e.g., United States v. Jaswal*, 47 F.3d 539, 543 (2d Cir. 1995) (per curiam); *United States v. Beltran-Gutierrez*, 19 F.3d 1287, 1291 (9th Cir. 1994); *United States v. Quesada-Rosadal*, 685 F.2d 1281, 1283 (11th Cir. 1982).

Nevertheless, the Court would need to know what specifically the Government is attempting to admit from Defendant's various filings and whether it is properly categorized as an opposing party admission. Indeed, certain motions, "especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of [ ] relevancy and potential prejudice in proper context." *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013). Absent the specific statement and context, the Court is hesitant to admit this category of evidence. Thus, the Court reserves its ruling on the statements made in the filings, until the Government identifies the specific statements, and their relevance, during the context of trial. *See also Fronter v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012) (stating that a court should deny or defer ruling on a motion *in limine* "if the context of trial would provide clarity.").

### B.   The Government's MIL #2

Second, the Government "requests that the Court make the preliminary determination that the foundational prerequisites for admissibility for various business records are satisfied based on the attached Certificates of Authenticity"— submitted by the Government as Attachment B. (D.I. 75 at 19). The Court has reviewed Attachment B. (D.I. 75, Ex. 2). Attachment B contains records from "Meta related to a Facebook account belonging to Defendant" and from the FDC of "recorded phone calls and email conversations;" and the respective certificates of authenticity. (D.I. 75 at 19; *see also* D.I. 75, Ex. 2). Therefore, the Government has demonstrated that the business records are self-authenticating under Federal Rule of Evidence 902(11). *See* Fed. R. Evid. 902(11) ("The original or copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or rule prescribed by the Supreme Court."). Defendant "does not object to admission of business records on foundational authenticity grounds but does not concede

that the records are relevant." (D.I. 87 at 2). As such, the Court grants the Government's motion that the foundational prerequisite of authenticity is satisfied.[5] Should Defendant wish to object to the admission of the documents on relevancy grounds, he may do so at trial.

### C. The Government's MIL #3

Third, the Government seeks to admit into evidence, and to potentially play for the jury, portions of the Defendant's recorded FDC call conversations between Defendant and Moorefield. (D.I. 75 at 22; *see also* D.I. 75, Ex. 3). Defendant "does not object to admission of the jail call recordings on foundational authenticity grounds." (D.I. 87 at 2-3). Instead, Defendant objects to the Government's motion on the basis that the calls may not be relevant and that the calls carry a substantial risk of unfair prejudice. (*Id.*).

For the reasons explained in the Court's analysis of MIL #1, *see supra* Section II (A)(2), the Court grants in part and denies in part the Government's motion.[6]

### D. The Government's MIL #4

Fourth, the Government seeks pretrial admission of three (3) photographs of Defendant. (D.I. 75 at 23). "[D]uring the search of the 9th Street residence, in the same bedroom where the Ruger pistol was located, law enforcement found a framed photo of a man believed to be Defendant with two children." (*Id.* at 24). The Government seeks to admit similar photographs of Defendant, all of which depict Defendant wearing the same beige jumpsuit and posing in front of the background, to establish that Defendant is the person in the framed photo. The Government

---

[5] On May 12, 2025, the Government filed a Motion *in Limine* to Conditionally Admit Business Records (D.I. 90). Defendant, however, has not had the opportunity to respond to the Government's motion. Therefore, the Court reserves its ruling on the records sought to be admitted in the Government's supplemental motion *in limine*.

[6] Of course, Defendant may object to the admission of the statements on relevancy grounds at trial.

asserts that the "framed photograph of Defendant is a key piece of evidence to establish that Defendant maintained dominion and control over the particular bedroom—the same bedroom where the Ruger pistol was found by law enforcement." (D.I. 88 at 3). Defendant, in opposition to the motion, asserts that the photographs are needlessly cumulative because the Government already has "home ownership records in this case" and statements from Defendant acknowledging that he was working at the residence. (D.I. 87 at 3). Defendant further asserts that the photographs, which were taken while Defendant was previously incarcerated, are prejudicial. (*Id.*). The Court, however, agrees with the Government.

The Court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Evidence is 'cumulative' when it adds very little to the probative force of the other evidence in the case, so that if it were admitted its contribution to the determination of truth would be outweighed by its contribution to the length of the trial . . .." *United States v. Cross*, 308 F.3d 308, 326 (3d Cir. 2002) (citation omitted). Here, the three additional photographs would add probative value that Defendant inhabited the bedroom and possessed the items therein.[7] Such evidence will allow "the trier of fact [to] hear[ ] [and see] all facts necessary to form an educated decision" as to whether the firearm belonged to the Defendant. *Planned Parenthood v. Verniero*, 22 F. Supp. 2d 331, 339 (D.N.J. 1998). Additionally, the introduction of the three photographs would not significantly delay trial.

---

[7] Although it is true that the Government can establish ownership of the residence through records and admissions, the Government seeks to admit these three photographs to show Defendant's dominion and control over the *front bedroom*, specifically. (*See* D.I. 88 at 3).

Moreover, although Defendant claims that the photograph would be unduly prejudicial, Defendant fails to elaborate on this argument. The Court infers that Defendant may find it prejudicial either because the beige jumpsuit indicates that he was incarcerated previously or because there is marijuana in the corner on the larger photograph. As to the first inference, Defendant has represented that he will stipulate to the existence of a prior conviction. (*See* D.I. 75 at 18 n. 20; *see also* D.I. 75, Ex. 1). Therefore, the jury will be informed, regardless, that Defendant was previously incarcerated. As to the second inference, the Government has represented that it "intends to crop the larger photograph to exclude the marijuana" from the image. (D.I. 75 at 23 n. 27). Accordingly, the Court is not persuaded that the three photographs are unduly prejudicial. Thus, the Government's fourth MIL is granted.

E.   **The Government's MIL #5**

Fifth, the Government moves to exclude evidence regarding the identifies of confidential sources and undercover officers in its ongoing drug investigation against Noah Jones. (D.I. 75 at 28). The Government explains that such evidence is "wholly irrelevant" to whether Defendant exercised dominion and control over the firearm found in the bedroom. (*Id.*); *see also* Fed. R. Evid. 402. Further, the Government correctly contends that it "holds a privilege 'to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.'"[8] (*Id.* at 29 (quoting *Roviaro v. United States*, 353 U.S. 53, 59

---

[8]   The Court, however, notes that motions to protect undercover officers' and confidential informants' identities implicate a defendant's right to confront adverse witnesses. Nevertheless, this right is "not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973). Such legitimate interests include protecting the identities of law enforcement and sources in ongoing criminal investigations. *Rovario*, 353 U.S. 59. Furthermore, here, Defendant's confrontation interest is "comparatively weak" because the officers' and sources' identities are not exculpatory as to Defendant nor evidently relevant as to whether Defendant committed the offense charged. *United States v. Terranova*, 750 F. Supp. 3d 15, 27 (E.D.N.Y. 2024).

(1957) (citations omitted)). Defendant does not object to the Government's motion. (D.I. 87 at 3). Thus, the Court grants the Government's MIL #5.

F.  **The Government's MIL #6**

Sixth, "[t]o the extent Defendant calls Moorefield or another individual to testify, the Government seeks a ruling that it may introduce certain other-acts evidence—namely, evidence of drugs and drug trafficking found at the 9th Street Residence, as well as evidence of a blank firing gun in the same room as the Ruger pistol." (D.I. 75 at 29). The Government avers that "[a]lthough this evidence is arguably prejudicial, it is not so overly prejudicial as to render it unfair;" and "it certainly does not substantially outweigh the probative value of the evidence, which is highly probative of witness credibility." (*Id.* at 30). Defendant opposes the motion and argues that "[t]he government has not established how the prejudicial information it would seek to put before the jury in the form of their questioning is relevant or within the scope of the presumed direct examination." (D.I. 75 at 4). Further, Defendant contends that "the government is not seeking to corroborate a witness or put on evidence probative of whether Mr. Fistzgiles possessed the gun, but to put on affirmative, irrelevant evidence of whether a defense witness saw contraband in the home." (*Id.* at 5). Based on the available arguments before the Court, the Court agrees with Defendant.

At this time, and out of context, the Court cannot determine whether the requested "other-acts" evidence would be admissible. For example, the witnesses' alleged involvement with or knowledge of contraband at the residence may be unduly prejudicial, unfair, irrelevant, or be used as improper character evidence. *See In re Paoli R. Yard PCB Litigation*, 916 F.2d 829, 859 (3d Cir. 1990) (remarking that "[e]xcluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary" and that a court "cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant

12

to the putatively objectionable evidence"). Although the Court presently denies the Government's motion, the Court recognizes that evidence of "other crimes, wrongs, or acts" is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). However, based on the record before it at this time, the Court is unable to determine what specifically the Government is attempting to admit and its relevance in context.

### G. The Government's MIL #7

Seventh, the Government requests "that the Court order all witnesses – including any potential witnesses that Defendant may call – to be sequestered with the exception that the government requests that its case agent, NCCPD Officer Donald Witte, to be permitted to remain in the courtroom throughout trial." (D.I. 75 at 30). Defendant does not object to witness sequestration. (D.I. 87 at 8). Pursuant to Federal Rule of Evidence 615, "at a party's request, the court must order witnesses excluded from the courtroom so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615(a). Thus, the Court grants the Government's seventh MIL.

### H. The Government's MIL #8

The Government's eighth MIL seeks to preclude Defendant from offering into evidence items that have not been disclosed to the Government in advance of trial. More specifically, "the government requests that the Court preclude Defendant from admitting or using at trial any materials not produced by May 15, 2025 required by Rule 16(b)" of the Federal Rules of Criminal Procedure. (*Id.* at 32). Defendant does not object to the Government's motion. (D.I. 87 at 9). The Court, however, in its discretion, sets May 13, 2025, at 3:00 p.m., as the deadline by which all disclosures under Federal Rule of Criminal Procedure 16(b) must be made. In other words, all of both sides' disclosures must be made by the pretrial conference.

13

I. **Defendant's MIL #1**

Defendant first moves to "preclude the government from using the terms 'convicted felon' and 'felony' under Federal Rules of Evidence 402 and 403." (D.I. 81 at 2). Defendant represents that he "will stipulate that he has been convicted of a crime punishable by imprisonment for a term exceeding one year." (*Id.*). Thus, Defendant asserts that "[r]eferring to [him] as a 'convicted felon' or to his stipulated crime as a 'felony' has no probative value and is only prejudicial." (*Id.*). The Government does not oppose this motion and has "removed these terms from its trial brief." (D.I. 84 at 5). Accordingly, the Court grants Defendant's first MIL.[9]

J. **Defendant's MIL #2**

Defendant next moves to "preclude the government from using discovery not yet disclosed to the defense" or, alternatively, to "set a final discovery deadline of Friday, May 2, 2025." (D.I. 81 at 6-7). Defendant asserts that "the government has made seven discovery productions," six of which were "made just a month-and-a-half before trial." (*Id.* at 7-8). Also, "Mr. Fistzgiles' custody status prevents him from reviewing discovery contemporaneously with the government's disclosures." (*Id.* at 8). Therefore, Defendant contends that, under Federal Rules of Evidence 402 and 403, the Government should not be able to introduce at trial any evidence not yet disclosed to the defense. (*Id.* at 6).

---

[9]   The Court observes that 18 U.S.C. § 922(g) does not contain the word "felon." Instead, § 922(g) states that it is "unlawful for any person" "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year," to possess or receive any firearm or ammunition. 18 U.S.C. § 922(g). Therefore, "there is no reason a court could not use alternative language – such as the language of the statute – instead of labeling the defendant a 'felon' or referring to a charge under § 922(g) as 'felon in possession.'" *United States v. Ray*, 803 F.3d 244, 260 (6th Cir. 2015). Moreover, the Court "agrees with Defendant that referring to him directly as a 'felon' or 'convicted felon' raises concerns of potential prejudice because these terms characterize him as a person rather than merely labeling his prior conduct." *United States v. Scott*, Case No. 21-cr-429, 2022 WL 1026725, 2022 U.S. Dist. LEXIS 63455, at *7 (S.D.N.Y. Apr. 5, 2022).

The Government, however, asserts that the motion should be denied because its productions "were made consistent with the Government's continuing duty to disclose evidence under [Federal Rule of Criminal Procedure] 16(c)" and was provided "weeks (and in some cases over a month) ahead of trial." (D.I. 84 at 2). The Government also represents that, at this time, "the only items left to produce are outstanding responses to trial subpoenas from Verizon Wireless (for subscriber information for a phone believed to be associated with Defendant) and the FDC (for additional jail calls involving Defendant)." (*Id.*). Moreover, in the alternative, the Government requests May 15, 2025, as a deadline for discovery disclosures because Defendant's requested date of May 2, 2025, has passed. (*Id.* n.2).

The Court, in its discretion, sets May 13, 2025, at 3:00 p.m., as the deadline by which all disclosures under Federal Rule of Criminal Procedure 16(c) must be made. In other words, all disclosures by both sides must be made by the pretrial conference.

K.  **Defendant's MIL #3**

Third, Defendant moves to preclude the Government from using the term "stash house" pursuant to Federal Rules of Evidence 403 and 701. (D.I. 81 at 10). Defendant contends that referring to Mr. Fistzgiles' residence as a "stash house" "creates the risk that the jury may convict Mr. Fistzgiles for his alleged ties to suspected drug activity." (*Id.* at 11). Additionally, "[a]llowing the government's witnesses to refer to the 9th Street Property as a 'stash house'. . .is a prejudicial expression that reflects opinion, not fact." (*Id.*).

The Government does not oppose the motion. "[T]he government does not intend to admit evidence or testimony in its case-in chief about either the drug investigation that preceded Defendant's arrest or the drug evidence found at the 9th Street residence." (D.I. 84 at 4). However, the Government asks the Court to allow use of the term "stash house" and to elicit tesitmony about the drug investigation "should Defendant's questioning of government

15

witnesses—or his own witnesses—open the door to facts surrounding either the investigation into Jones or the drug and drug-related evidence recovered from the 9th Street residence." (D.I. 84 at 5).

The Court agrees with Defendant and finds that the term "stash house" is unduly prejudicial; particularly, whereas here, Defendant has not been charged with or found guilty of any drug-related offenses which occurred at the 9th Street residence. Accordingly, the Court grants Defendant's third MIL.

### III.  CONCLUSION

For the reasons explained above, on this 13th day of May 2025, it is SO ORDERED that:

1. The Government's MIL #1 is GRANTED IN PART and DENIED IN PART. The Court grants the Government's motion as to Defendant's statements recorded on law enforcement body camera and Defendant's statements in FDC Calls, denoted in Transcript Exhibit 5 of Attachment C. The Court denies the motion as to Defendant's statements in FDC Calls, denoted in Transcript Exhibits 1-3 of Attachment C. The Court RESERVES its ruling as to the statements made in the FDC Call denoted as Transcript Exhibit 4. The Court RESERVES its rulings on admission of any proposed statements made by Defendant in Court filings in this case until specifically identified and considered in context during trial;

2. The Government's MIL #2 is GRANTED;

3. The Government's MIL #3 is GRANTED IN PART and DENIED IN PART;

4. The Government's MIL #4 is GRANTED;

5. The Government's MIL #5 is GRANTED;

6. The Government's MIL #6 is DENIED WITHOUT PREJUDICE to be considered in context during trial;

7. The Government's MIL #7 is GRANTED;

8. The Government's MIL #8 is GRANTED IN PART and DENIED IN PART;

9. Defendant's MIL #1 is GRANTED;

10. Defendant's MIL #2 is GRANTED IN PART and DENIED IN PART; and

11. Defendant's MIL #3 is GRANTED.

_____
The Honorable Gregory B. Williams
UNITED STATES DISTRICT JUDGE